## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 24-cv-01705**

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

v.

**WESTERN SIERRA RESOURCE CORPORATION, ROGER JOHNSON, AND DENNIS ATKINS,**

Defendants.

---

## COMPLAINT

---

Plaintiff United States Securities and Exchange Commission ("SEC"), for its Complaint against Western Sierra Resource Corporation ("Western Sierra"), Roger Johnson ("Johnson"), and Dennis Atkins ("Atkins") (collectively, "Defendants"), alleges as follows:

## SUMMARY OF THE ACTION

1.      For over two years, Western Sierra, its chief executive officer ("CEO") Johnson, and its chief financial officer ("CFO") Atkins claimed that Western Sierra had an interest in gold mining claims worth billions of dollars, when it did not. The Defendants made these repeated false claims in multiple press

1

releases, quarterly and annual submissions filed with the trading platform Over-the-Counter ("OTC") Markets, and on Western Sierra's website. During this entire period, investors purchased Western Sierra stock without knowing the true assets of the company.

2.      For example, Western Sierra, through Johnson and Atkins, claimed it had paid $10 million for an interest in Company A, which purportedly owned more than 640 acres of Bureau of Land Management mining claims within the State of Nevada (the "Sage Hen Mining Claims").

3.      This was false. In truth, and as the Defendants knew, Company A did not own any mining claims, and Western Sierra did not pay $10 million for the claims that Company A did not own.

4.      Nonetheless, the Defendants repeated these statements, while also making other false statements about the Sage Hen Mining Claims.

5.      As a result of the conduct described herein, Defendants have violated and, unless restrained and enjoined, will continue to violate, Section 10(b) of the Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)), and Rule 10b-5(b) (17 C.F.R. § 240.10b-5(b)).

## DEFENDANTS

6.      **Defendant Western Sierra Resource Corporation** is a Utah corporation, with its principal place of business in Glenwood Springs, Colorado. Western Sierra purports to be a natural resource development and mining company.

7.      **Defendant Roger Johnson**, age 70, is a resident of Steamboat Springs, Colorado. Johnson serves, and at all relevant times has served, as CEO of Western Sierra and, personally and through a separate company, owns approximately 33 million shares of Western Sierra's Preferred Series A shares (33% of the total Series A shares). He also personally owns 3,333,333 Western Sierra's Preferred Series B shares (33% of the total Series B shares). Neither Western Sierra's Preferred Series A shares nor its Preferred Series B shares are convertible to common stock.

8.      **Defendant Dennis Atkins**, age 64, is a resident of Edmond, Oklahoma. Atkins serves, and at all relevant times has served, as the CFO of Western Sierra. Atkins owns 49,103,000 of Western Sierra's common shares (14.57% of the total common shares), approximately 33 million of Western Sierra's Preferred Series A shares (33% of the total Series A shares), and 3,333,333 of Western Sierra's Preferred Series B shares (33% of the total Series B

3

shares). Atkins also filed the incorporation paperwork to form Company A and is its CFO.

## **RELATED ENTITIES**

9.      **Company A** is a Nevada corporation formed on June 21, 2021. Atkins and another individual established this entity to manage future gold and other precious metals mining operations in Nevada and to employ the individuals who would work on the planned projects. It does not own, nor has it ever owned, the Sage Hen Mining Claims. As described below, in 2021 Western Sierra entered into an agreement with Company A to acquire 70% of its stock.

10.     **Company B** purports to hold the Sage Hen Mining Claims and is not affiliated with any of the Defendants. It entered into an agreement with Company A to develop the Sage Hen Mining Claims. Per the terms of the contract, after Company A paid $10 million to Company B, Company B would transfer the Sage Hen Mining Claims to Company A, and Company A would receive 49% of any income produced by the planned projects. Company A never paid Company B the $10 million, Company B never transferred the Sage Hen Mine Claims to Company A, and the planned development of the Sage Hen Mining Claims never produced any income.

## JURISDICTION AND VENUE

11.     The SEC brings this action under the authority conferred by Section 21(d) of the Exchange Act (15 U.S.C. § 78u(d)). With respect to each of the Defendants, the SEC seeks a permanent injunction against violations of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5(b) (17 C.F.R. § 240.10b-5(b)) and civil penalties pursuant to Section 21(d)(3) of the Exchange Act (15 U.S.C. § 78u(d)(3)). With respect to Johnson and Atkins, the SEC also seeks an officer and director bar pursuant to Section 21(d)(2) of the Exchange Act (15 U.S.C. § 78u(d)(2)) and a penny stock bar pursuant to Section 21(d)(6)(A) of the Exchange Act (15 U.S.C. § 78u(d)(6)(A)).

12.     The Court has jurisdiction over this action pursuant to Sections 21(d) and 27(a) of the Exchange Act (15 U.S.C. §§ 78(u)(d) and 78aa).

13.     Venue lies in this Court pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa). Among other things, certain acts or transactions constituting the violations of the federal securities laws detailed herein occurred in this district. Specifically, at all relevant times, Western Sierra's principal place of business was in Glenwood Springs, Colorado; Johnson resided in this district; and the false and misleading statements identified herein were made in, among other places, this district.

14.     In connection with the transactions, acts, practices, and courses of business described in this Complaint, Defendants, directly and indirectly, made use of the means and instrumentalities of interstate commerce, of the mails, or of the means and instrumentalities of transportation or communication in interstate commerce.

## FACTS

### I.     Background

#### A.     Western Sierra and the Announcement of its Project with Company A.

15.     Western Sierra claims in its OTC submissions that its primary business is the extraction of precious metals as well as other natural-resource related projects such as contamination mitigation.

16.     From at least June 2021 through at least October 2023, Western Sierra's shares were quoted on OTC Link. As of at least March 2024, Western Sierra's shares on OTC Link were limited to unsolicited quoting activity only.

17.     From at least June 2021 through present, Western Sierra's shares have been "penny stocks" and have qualified as such because, among other things, (1) the securities were not an "NMS stock," as defined in 17 C.F.R. § 242.600(b)(55); (2) they traded below five dollars per share during the relevant period; (3) Western Sierra had net tangible assets and average revenue below the

thresholds of Exchange Act Rules 3a51-1(g)(1) and (2) (17 C.F.R. §§ 240.3a51-1(g)(1) and (2)); and (4) the securities did not meet any of the other exceptions from the definition of "penny stock" contained in Exchange Act Rule 3a51-1 (17 C.F.R. § 240.3a51-1).

18.     In the summer of 2021, Western Sierra began issuing a series of press releases about a planned project with Company A. Johnson and Atkins drafted and approved the press releases and other updates about the planned project.

**B.     Company A is Formed and Enters Into a Joint Venture with Company B.**

19.     On June 21, 2021, the day before Western Sierra issued the press release announcing the project discussed below, Atkins incorporated Company A. Atkins, who filed the paperwork for the formation, was the CFO of Company A and expected to own a portion of Company A. Atkins formed Company A to manage future gold and other precious metals mining operations in Nevada and to employ the individuals who would work on the projects.

20.     On June 26, 2021, Company A entered into a Joint Venture Agreement with Company B whereby it agreed to pay Company B $50,000 within three days, and provide an additional $10 million as described below, in exchange for the Sage Hen Mining Claims and 49% of the net income from the planned projects. Atkins and one other individual signed the agreement on behalf of

Company A. Per the terms of the agreement, Company A was required to pay Company B $1 million within 60 days of the agreement's execution, $2 million within 90 days of the agreement's execution, and $7 million within 150 days of the agreement's execution. Company A met none of these deadlines. The only payment made related to this agreement was a $50,000 payment that Western Sierra paid on behalf of Company A on July 19, 2021. As Company A never paid Company B the $10 million, Company A never owned the Sage Hen Mining Claims.

**C.    Western Sierra Contracts to Purchase an Interest in Company A.**

21.    Two days after Company A entered into the Joint Venture Agreement with Company B, on June 28, 2021, Western Sierra, through Johnson and Atkins, contracted to purchase 70% of Company A for $100,000 due within 30 days of the execution of the agreement and "agree[d] to provide an additional $9,900,000 of funding to [Company A] on a best-efforts basis to be used for the construction [of] the 100 ton per day production and extraction plant on the Sage Hen claims." Western Sierra never paid Company A the $100,000 within 30 days of the execution of the contract and never paid the additional $9,900,000 it owed.

22.    On September 27, 2021, Western Sierra, Company A, and Company B entered an agreement to expand the total acreage of the Sage Hen Mining Claims

8

that could be purchased to 1300 acres and to increase the total required financing

by $2 million, from $10 million to $12 million. That agreement required $100,000

to be paid to Company B on that date and an additional $250,000 to be paid within

12 months. While Western Sierra paid the original $100,000, neither Western

Sierra nor Company A paid Company B the required additional $250,000. Further,

the contract was never fully executed. While Western Sierra and Company B

signed the contract, Company A never executed it.

23.    To date, neither Company A nor Western Sierra have any interest in

the original or expanded Sage Hen Mining Claims.

## II.    Defendants Made Materially False and Misleading Statements in the June 22, 2021 Press Release.

24.    On June 22, 2021, Western Sierra made false and misleading

statements, which Johnson and Atkins drafted and approved, concerning

negotiations over the purchase of the Sage Hen Mining Claims in a press release

titled "Western Sierra Resource Corporation Enters Talks to Acquire Majority

Stake in a Gold Mining Operation with Enhanced Recovery Net Income Projected

at $3.2 Billion" (the "June 22 Press Release").

25.    In the June 22 Press Release, which was posted on the Western Sierra

website and published via a newswire service, Defendants stated that Western

Sierra had started negotiations to acquire 70% of Company A, which "owns 49%

of the Sage Hen Mining claims in Nevada totaling 640 acres" and that Company A's portion of the annual net income of the purported mining operation was projected to be $3.2 billion.

26.    A reasonable investor would have understood from the statements that Company A owned an interest in the Sage Hen Mining Claims and that Western Sierra was going to purchase 70% of Company A.

27.    The statements in the June 22 Press Release were false and misleading because Company A, which was formed one day prior to the issuance of the press release, did not own 49%—or any other percentage—of the Sage Hen Mining Claims.

28.    Indeed, at the time of the June 22 Press Release, Company A did not have a contract to purchase the Sage Hen Mining Claims. Further, four days later, when Company A entered into a contract concerning the Sage Hen Mining Claims (which Atkins signed on behalf of Company A), it did not receive the mining claims, but rather only the *right to purchase* the claims for $10 million, which it has never paid.

29.    The false and misleading statements in the June 22 Press Release regarding Company A and its ownership of the Sage Hen Mining Claims were material to investors because, among other things, knowing that Company A did

not actually have any stake in a planned gold mining operation with revenue in the billons would be material to an investor deciding whether to invest in Western Sierra.

30.    On June 22, 2021, the day the press release was issued, the stock price closed up over 840% from the prior trading day closing price at $0.2495. The volume also increased 13,483% from the prior trading day, from 1.4 million on June 21, 2021, to over 192 million on June 22, 2021.

III.    **Defendants Made False and Misleading Statements in the June 30, 2021 Press Release.**

31.    On June 30, 2021, Western Sierra again made false and misleading statements, which Johnson and Atkins drafted and approved, concerning the acquisition of the Sage Hen Mining Claims in a press release titled "Western Sierra Resource Corporation Acquires Majority Ownership of [Company A] and the Sage Hen Mine" (the "June 30 Press Release").

32.    In the June 30 Press Release, which was posted on the Western Sierra website and published via a newswire service, Defendants stated that Western Sierra "has completed negotiations and has fully executed an agreement with [Company A] to acquire 70% of [Company A's] common stock in exchange for $10 million which will be used to immediately initiate development of the Sage Hen Mining Claims in Western Nevada."

33.    A reasonable investor would have understood from this statement that Western Sierra had successfully completed negotiations with Company A and was going to pay Company A $10 million for 70% of Company A's common stock, which would be used to develop the Sage Hen Mining Claims.

34.    This statement in the June 30 Press Release was false and misleading because, while the June 30 Press Release stated that Western Sierra had a fully executed agreement to acquire 70% of Company A's stock for $10 million, the contract between Western Sierra and Company A required Western Sierra to pay Company A $100,000 for 70% of Company A's common stock within 30 days— not $10 million. The contract stated that Western Sierra would pay an additional $9,900,000 "on a best efforts basis." Moreover, Western Sierra never paid Company A this $100,000 within the time frame the contract required.

35.    In the June 30 Press Release, the Defendants also stated that "[Western Sierra's] management's level of confidence in this project is such that the $10 million cost of the 100 ton/day plant will be invested directly by [Western Sierra's] officers and directors to prevent dilution of shareholder equity in the Company."

36.    A reasonable investor would have understood from this statement that the officers and directors of Western Sierra, Johnson and Atkins, were personally

investing millions of dollars of their own money in the project, aligning their personal interests with the interests of investors and demonstrating their commitment to the project.

37.    This statement in the June 30 Press Release was false and misleading because neither Johnson nor Atkins planned to invest $10 million and neither had the assets to pay this amount. They instead intended to employ other funding sources. Additionally, once those alternative funding routes failed to materialize, neither Johnson nor Atkins individually (or collectively) invested $10 million to fund the project.

38.    In the June 30 Press Release, the Defendants also stated that:

[Company A] and [Western Sierra] will immediately commence the 90-day permitting process to obtain a five-acre disturbance permit on the 640 acre development site on which to build a $10 million, 100 ton/day Pilot Processing Plant. The facility is scheduled to be fully operational within 12 months. However, specific testing and limited development of the mining claims will commence immediately.

39.    A reasonable investor would have understood from this statement that Western Sierra would immediately utilize the Sage Hen Mining Claims and that Company A and Western Sierra were able to start the process to obtain a permit and begin development.

40.    This statement in the June 30 Press Release was false and misleading because neither Company A nor Western Sierra had any rights to start

13

development as neither had paid the required amounts to acquire the Sage Hen Mining Claims and therefore, neither owned any of the Sage Hen Mining Claims.

41.    The false and misleading statements in the June 30 Press Release regarding the amount of the contract with Company A, the commitment of management to funding the project, and the status of the project were material to investors because all would be important to a reasonable investor deciding whether to invest in Western Sierra. Further, a reasonable investor would take away from these statements that Western Sierra, Johnson, and Atkins had $10 million in funds to immediately start a project with a claimed annual net income in the billions of dollars.

42.    On June 30, 2021, the day the press release was issued, the stock price closed up over 48% from the prior trading day closing price at $0.3988. The volume also increased 189% from the prior trading day, from 22 million on June 29, 2021, to 64 million on June 30, 2021.

## IV.    Defendants Made False and Misleading Statements in the July 8 and July 13, 2021 Press Releases.

43.    After the June 30 Press Release, Western Sierra continued to disseminate public statements, which Johnson and Atkins drafted and approved, falsely touting its acquisition of the mining rights.

44.     Approximately one week later, on July 8, 2021, Western Sierra issued a press release, drafted and approved by Johnson and Atkins, which was posted on the Western Sierra website and published via a newswire service, to announce a new project, which also referenced its "Sage Hen Gold Reserve acquisition by way of its majority (70%) common stock ownership interest in [Company A]" that was "finalized and announced last week."

45.     A similar claim was repeated on July 13, 2021, when Western Sierra issued a press release, drafted and approved by Johnson and Atkins, which was posted on the Western Sierra website and published via a newswire service, where Defendants stated that they will "actively strive, as major (70%) stakeholder in [Company A] to bring the Sage Hen Gold Reserve in Western Nevada into rapid production (as announced June 30, 2021)."

46.     As explained above, the statements in the July 8 and July 13, 2021 press releases concerning the Sage Hen Mining Claims were false and misleading because neither Company A nor Western Sierra owned any portion of the mining claims.

47.     The false and misleading statements in the July 8 and July 13, 2021 press releases regarding the Sage Hen Mining Claims were material to investors,

because, among other things, investors would want to know if Western Sierra did
not actually have any ownership in the Sage Hen Mining Claims.

48.    Following the July 8 press release, which mainly addressed different
projects, the stock price increased approximately 25% from the prior trading day
closing price, up to a high of $0.2563, but closed the day down to $0.184—down
9% from the prior day's close. The volume also increased 68% from the prior
trading day, from 8.8 million on July 7, 2021, to over 14.8 million on July 8, 2021.

49.    Following the July 13 press release, which mainly addressed different
projects, the stock price increased approximately 18% from the prior trading day
closing price, up to a high of $0.246, but closed the day down to $0.1623—down
22% from the prior day's close. The volume also increased 47% from the prior
trading day, from 9.2 million on July 12, 2021, to over 13.5 million on July 13,
2021.

**V.    Defendants Made False and Misleading Statements in the August 3,
2021 Press Release.**

50.    On August 3, 2021, Western Sierra again made false and misleading
statements, which Johnson and Atkins drafted and approved, about the Sage Hen
Mining Claims in a press release titled "Western Sierra Resource Corporation
Announces 69% Increase in Previously Projected Revenues to $4.6 Billion,

Expansion of Claims by Additional 660 Acres and Engagement of Mining Contractors at Sage Hen Mine" (the "August 3 Press Release").

51.     In the August 3 Press Release, which was posted on the Western Sierra website and published via a newswire service, Defendants announced the "results of an 'Assay Review and Enhanced Recovery Report' (July 21, 2021)" commissioned with a California PhD and company. Defendants stated that this report determined "that a 69% recovery rate increase from the Company's earlier estimates is likely." The recovery rate referred to how much precious metals—including gold, silver, and palladium—the parties expected to be able to extract using proprietary recovery methods Company A had developed.

52.     A reasonable investor would have understood from the statements that the Californian PhD and company had issued a report finding a likely 69% increase in the expected amounts of precious metals the parties were able to extract.

53.     The statement in the August 3 Press Release is false and misleading because, on information and belief, no such report exists. Despite issuing a subpoena for the report and multiple follow-up requests to the Defendants, they did not produce this report. The SEC further states that it will likely have evidentiary support that no such report exists after further investigation and discovery.

54. In the August 3 Press Release, Defendants also stated that "on July 22, 2021, an Agreement was executed that expands the Sage Hen Mine boundary by 660 acres to a total of 1300 acres."

55. This statement in the August 3 Press Release was false and misleading for two reasons.

    a.    First, Western Sierra did not own any mining claims. It did not own the original 640 acres and did not own an additional 660 acres.

    b.    Second, at the time of the August 3 Press Release, there was no agreement among Western Sierra, Company A, and Company B to expand the Sage Hen Mining Claims. Over a month later, on September 27, 2021, Western Sierra, Company A, and Company B purported to have entered into an agreement extending the time for Western Sierra to raise the required funding and increasing the acreage by 660 acres and the funding required by $2 million for a total of $12 million. However, Company A never signed the agreement.

56. Additionally, while the new agreement extended the amount of land Company A/Western Sierra could purchase, it also required Company A/Western

Sierra to pay an additional $350,000 for the extension and increased the total

required financing by $2 million, neither of which was disclosed in the press

release.

57.    A reasonable investor would have understood from the statements that

the Western Sierra had secured more land to develop, which would likely increase

the possible return.

58.    The false and misleading statements in the August 3 Press Release

were material to investors because, among other things, an increased rate of

recovery of precious metals and increased acreage for development would have

been material to investors deciding whether to invest in Western Sierra.

59.    On August 3, 2021, the day the press release was issued, the stock

price increased approximately 29% from the prior trading day closing price, up to a

high of $0.215 but closed the day down to $0.126—down 24% from the prior

trading day closing price. The volume of the stock trading increased 527% from

the prior trading day, from 4 million on August 2, 2021, to 25.1 million on August

3, 2021.

## VI.    Defendants Made False and Misleading Statements in the September 21, 2021 Press Release.

60.    On September 21, 2021, Defendants again made false and misleading

statements, which Johnson and Atkins drafted and approved, concerning the

funding of the Sage Hen Mining Claims and the status of a purported expansion in

a press release titled "Western Sierra Resource Corporation Provides Update on

Progress to Become a Multi-Project Natural Resource Company" (the "September

21 Press Release").

61.    In the September 21 Press Release, which was posted on the Western

Sierra website and published via a newswire service, Defendants stated that:

> As stated in prior announcements, the Company's officers and directors
> have committed to funding the $10 million Sage Hen Mining Project
> without issuing any new shares. *The next* $2.5 million is scheduled to
> transfer from [Western Sierra] to [Company A] within the next 30 days
> to allow completion of the permitting necessary for construction of the
> 100 ton per day pilot plant. (Emphasis added.)

62.    A reasonable investor would have understood from this statement that

Western Sierra had made an initial payment for the Sage Hen Mining Claims and

was ready to make the next $2.5 million payment, even though Western Sierra had

never disclosed that it had not yet paid the $10 million it said that it would pay or

disclosed a payment plan.

63.    This statement in the September 21 Press Release was false and

misleading because the use of the term "next" implied that an initial payment had

been made when it had not. Per the terms of the contract between Company A and

Company B, $1 million was due within 60 days of the contract execution,

$2 million within 90 days of the contract execution, and $7 million within 150 days

of the contract execution. Neither Company A nor Western Sierra, however, had

made the first payment. By September 21, 2021, Western Sierra/Company A had

only paid $50,000 towards the contract.

64.     The statement was also misleading because a reasonable investor

would understand this statement to mean that Western Sierra intended to make

(and was capable of making) the "next $2.5 million payment."

65.     At the time of the press release, there was no reasonable basis for

Western Sierra to believe that it would have the $2.5 million in the next 30 days,

and it, in fact, did not. Neither Western Sierra nor Company A had assets or any

sources of income that would produce $2.5 million as of September 21, 2021. As

of September 30, 2021, Western Sierra reported in its OTC quarterly submission

that it had $91 in cash or cash equivalents.

66.     The false and misleading statements in the September 21 Press

Release regarding the funding of the project and the status of a planned expansion

were material to investors because, among other things, these facts portrayed a

growing company with substantial assets to invest.

67.     On September 21, 2021, the day the press release was issued, the

stock price rose around 38% from the prior day closing price and closed 11% up.

The volume also increased over 400% from the prior trading day from 599,752 on

September 20, 2021, to 3.1 million on September 21, 2021.

**VII.  Defendants Repeated these Materially False and Misleading Statements in Quarterly and Annual Submissions, On Their Website, and in a series of press releases in 2023.**

68.     From June 2021 through least October 2023, Western Sierra issued

several public statements, which Johnson and Atkins drafted and approved, that

repeated many of the false and misleading statements above.

**A.     Defendants Continued to Make False and Misleading Statements.**

**i.      Defendants Made False and Misleading Statements in Western Sierra Quarterly and Annual Submissions.**

69.     Western Sierra's June 30, 2021 quarterly submission to OTC Markets

("Quarterly Submission") (issued on August 15, 2021); the September 30, 2021

Quarterly Submission (issued on November 9, 2021); the 2021 Annual Submission

(issued on April 15, 2022); the March 31, 2022 Quarterly Submission (issued on

May 13, 2022); the June 30, 2022 Quarterly Submission (issued on August 21,

2022); the September 30, 2022 Quarterly Submission (issued on November 21,

2022); the 2022 Annual Submission (issued on May 3, 2023); and the March 31,

2023 Quarterly Submission (issued on May 24, 2023), which were published on

the OTC Markets website, made the following statements:

a.    "On June 28, 2021, the Company executed an agreement with [Company A] to acquire 70% of Company A's common stock in exchange for $10 million which will be used to immediately initiate development of the Sage Hen Mining Claims in Western Nevada."

b.    "[Company A] and [Western Sierra] will immediately commence the 90-day permitting process to obtain a five-acre disturbance permit on the 640 acre development site on which to build a $10 million, 100 ton/day Pilot Processing Plant. The facility is scheduled to be fully operational within 12 months. However, specific testing and limited development of the mining claims will commence immediately."

c.    "Based on a subsequent 'Assay Review and Enhanced Recovery Report' dated July 21, 2021, projected annual net income from the 100 ton/day and 1,100 ton/day operation have been increased from $269 million to $415 million and from $3.2 billion to $4.57 billion, respectively."

d.    "Based on a subsequent agreement dated July 22, 2021, the total acreage will be increased from 640 acres to 1,300 acres."

e.    "[Western Sierra] management's level of confidence in this

project is such that the $10 million cost of the 100 ton/day plant

will be invested directly by [Western Sierra's] officers and

directors to prevent dilution of shareholder equity in the

Company."

70.    For the same reasons alleged in paragraphs 24 through 67, these

statements, which in substance contain the same information in Western Sierra's

press releases discussed above and published from June 22, 2021 to September 21,

2021, were false and misleading.

71.    In each of these submissions, Johnson and Atkins signed a

certification stating that "[b]ased on my knowledge, this disclosure statement does

not contain any untrue statement of a material fact or omit to state a material fact

necessary to make the statements made, in light of the circumstances under which

such statements were made, not misleading with respect to the period covered by

the disclosure statements."

### ii.    Defendants Made False and Misleading Statements on Western Sierra's Website.

72.    Western Sierra linked each of the above-referenced press releases to

its website. In addition, until at least October 2023, the Western Sierra website, for

which Johnson and Atkins both admitted responsibility, contained materially false

and misleading statements about the Sage Hen Mining Claims that were similar to statements made in the press releases described above. Specifically, the Western Sierra website provided:

   a.   "[Western Sierra] has acquired 70% of [Company A's] stock in exchange for [Western Sierra's] $10 million investment in the project."

   b.   Western Sierra's contract with Company A "provides [Western Sierra] with a majority stake in the development of the 640+ acre Sage Hen Gold Reserve in Western Nevada."

   c.   "A total of $10 million will be required to construct the 100 ton/day plant and commence production and recovery operations. $1.5 million is required within 60 days, $2 million within 90 days, and the balance of $7 million within 150 days."

73.   As discussed above, these statements were similar to statements made in the press releases described above and are materially false and misleading.

74.   For the same reasons alleged in paragraphs 24 through 67, these statements, which in substance contain the same information in Western Sierra's press releases discussed above and published from June 22, 2021 to September 21, 2021, were false and misleading.

###### iii.    Defendants Made False and Misleading Statements in a Series of Press Releases in 2023.

75.    Western Sierra continued to issue press releases into 2023, which Johnson and Atkins drafted and approved, that contained false and misleading statements about its ownership of mining rights.

76.    The January 24, 2023; January 31, 2023; and April 18, 2023 press releases (collectively, the "2023 Press Releases"), which were posted on the Western Sierra website and published via a newswire service, repeated the false and misleading statement that Western Sierra "acquired a 70% Stake in [Company A] and its Sage Hen reserve."

77.    The statements remained false and misleading in 2023 because Company A still did not own any part of the Sage Hen Mining Claims.

### B.    The False and Misleading Statements were Material.

78.    The false and misleading statements in the quarterly and annual submissions, on Western Sierra's website, and in the 2023 Press Releases were material to investors because, among other things, the ownership of the Sage Hen Mining Claims, the source of the project funding, and the planned expansions would have been material to investors deciding whether to invest in Western Sierra.

## VIII. Defendants Made the Materially False and Misleading Statements Concerning the Acquisition of Mining Rights.

79.    Johnson and Atkins made and were responsible for these false and misleading statements. From October 2018 through September 2022, Johnson and Atkins were the sole employees of Western Sierra.

80.    Johnson and Atkins wrote and approved each of the press releases, OTC submissions, and the contents of Western Sierra's website discussed above. The public statements concerning the Sage Hen Mining Claims were drafted, approved, or drafted and approved, by both Johnson and Atkins. Each had ultimate authority over the statements described in this Complaint.

81.    Western Sierra also made and was responsible for these false and misleading statements. Western Sierra published each of the press releases, OTC submissions, and the website discussed above, and each of these statements were statements of Western Sierra.

## IX. Defendants' False Statements were in Connection with the Purchase or Sale of Securities.

82.    Defendants' false and misleading statements were made in connection with the purchase or sale of securities given that Western Sierra's stock was publicly trading on OTC Link at the time they were made.

**X.     Defendants Acted with Scienter.**

83.     The above statements were false and misleading when made, and
Defendants knew, or were reckless in not knowing, that the statements were false
and misleading.

84.     Johnson and Atkins, in their positions as CEO and CFO, respectively,
both were involved in and knowledgeable about Western Sierra's acquisitions and
finances and had access to records that would have allowed them to know the
statements were false. Both Johnson and Atkins knew how little money Western
Sierra had during the relevant period.

85.     Both Johnson and Atkins knew or were reckless in not knowing, as
CEO and CFO, that Company A had not paid the $10 million for the Sage Hen
Mining Claims and that the Sage Hen Mining Claims had not been transferred to
Company A or Western Sierra.

86.     Further, Atkins was involved in the formation of Company A and, as
the CFO of Western Sierra and Company A, was aware Company A did not own
the Sage Hen Mining Claims.

87.     As the CEO and CFO of Western Sierra, the scienter of Johnson and
Atkins is imputed to Western Sierra.

## FIRST CLAIM FOR RELIEF
### Fraud—Violations of Section 10(b) of the Exchange Act,
### and Exchange Act Rule 10b-5(b)
### (Against All Defendants)

88.    The SEC realleges and incorporates by reference above paragraphs 1 through 87 as if fully set forth herein.

89.    By virtue of the foregoing, Defendants, directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, of the mails, or of the facility of a national securities exchange, in connection with the purchase or sale of a security made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

90.    By engaging in the conduct described above, Defendants, directly or indirectly, violated, and unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act (15 U.S.C. §78j(b)), and Rule 10b-5(b) thereunder (17 C.F.R. § 240.10b-5(b)).

## REQUEST FOR RELIEF

**WHEREFORE**, the SEC respectfully requests that this Court:

### I.

Find that each of the Defendants committed the violations alleged in this Complaint.

**II.**

Enter an injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining each of the Defendants from violating, directly or indirectly, the laws and rules each is alleged to have violated in this Complaint.

**III.**

Pursuant to Section 21(d)(3) of the Exchange Act (15 U.S.C. § 78u(d)(3)), order each of the Defendants to pay civil penalties in an amount to be determined by the Court.

**IV.**

Pursuant to Section 21(d)(2) of the Exchange Act (15 U.S.C. § 78u(d)(2)), enter an order prohibiting Defendants Johnson and Atkins from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act (15 U.S.C. § 78l), or that is required to file reports pursuant to Section 15(d) of the Exchange Act (15 U.S.C. § 78o(d)).

**V.**

Pursuant to Section 21(d)(6)(A) of the Exchange Act (15 U.S.C. § 78u(d)(6)(A)), enter an order barring Defendants Johnson and Atkins from participating in an offering of penny stock, including engaging in activities with a

broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock.

## VI.

Grant such other relief as this Court deems appropriate.

## JURY DEMAND

The SEC demands a trial by jury on all claims so triable.

Dated:  June 18, 2024

/s/ *Jodanna L. Haskins*
Jodanna L. Haskins
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
Denver Regional Office
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000
haskinsjo@sec.gov